## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT M. VINOSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:20-cv-134 |
| | ) | Judge Stephanie L. Haines |
| THE HONORABLE RICHARD A. | ) | |
| CONSIGLIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

This is a civil rights action filed by Plaintiff Scott M. Vinosky ("Plaintiff") wherein he alleges his constitutional rights were violated as a result of the conduct, actions, and/or inactions of the fourteen Defendants, which Plaintiff alleges led to his illegal and unconstitutional arrest, detention, and imprisonment.  In his amended complaint (ECF No. 86),[1] Plaintiff has named the following entities and individuals as Defendants: the Honorable Richard A. Consiglio, former district attorney of Blair County, Pennsylvania; Rodney B. Estep, Jr., chief of police for Hollidaysburg Borough Police Department; Officer Allen Fochler, employee of the Hollidaysburg Borough Police Department; Officer John Doe, police officer with the Hollidaysburg Borough Police Department;[2] Sergeant Jesse G. Moyer, Pennsylvania State Police; Chief Leo Berg, chief of police for Allegheny Township Police Department; Blair County; Hollidaysburg Borough; Allegheny Township; Officers Christopher Rosenberry and Barry Fry, police officers with Logan

---

[1] The amended complaint is the operative pleading in this matter. Plaintiff commenced this action by filing a complaint on July 17, 2020 (ECF No. 1).  The named defendants in the complaint then filed motions to dismiss (ECF No. 61, 64, 66, 68, 74, and 79), and Plaintiff filed the amended complaint (ECF No. 86) in response to those motions.

[2] The parties do not raise any arguments specific to Officer John Doe, employee of Hollidaysburg Police Department, and as such, the Court does not address the claims against this Doe Defendant.

Township Police Department; Township of Logan; Maureen Letcher, senior high school principal of Hollidaysburg Area School District; and Hully Hoover, guidance counselor at Hollidaysburg Area School District.  The individual defendants are sued in their individual capacity, though described in the amended complaint (ECF No. 86) in relationship to their occupations with the various municipal Defendants.

In response to the amended complaint (ECF No. 86), all Defendants except Defendant Sergeant Jesse G. Moyer filed motions to dismiss Plaintiff's amended complaint.[3]  Specifically, the following motions are pending before the Court: motion to dismiss for failure to state a claim filed by Defendant Blair County, Pennsylvania (ECF No. 104), motion to dismiss for failure to state a claim filed by Defendants Barry Fry, Christopher Rosenberry, and Township of Logan (ECF No. 108), motion to dismiss for failure to state a claim filed by Defendants Allegheny Township and Leo Berg (ECF No. 110), motion to dismiss for failure to state a claim filed by Defendant Richard A. Consiglio (ECF No. 116), motion to dismiss for failure to state a claim filed by Defendants Rodney B. Estep, Jr., Allen Fochler, and Hollidaysburg Borough (ECF No. 118), and motion to dismiss for failure to state a claim by Defendants Maureen Letcher and Hully Hoover (ECF No. 120).  The moving Defendants filed briefs in support of their motions to dismiss (ECF Nos. 105, 109, 111, 117, 119, and 121).  Plaintiff filed an omnibus response in opposition to the motions to dismiss (ECF No. 124) and an accompanying brief in opposition (ECF No. 125).  The moving Defendants, with the exception of Defendants Allegheny Township, Chief Berg, and Consiglio filed reply briefs (ECF Nos. 127, 132, 138, and 139).  Plaintiff then filed a sur-reply in

---

[3] Defendant Moyer filed an answer to the amended complaint on December 14, 2020 (ECF No. 107).

opposition to those reply briefs (ECF No. 142).  The matter has been fully briefed and is ripe for disposition.

For the reasons detailed below, the Court rules on the moving Defendants' motions to dismiss as follows: the motion to dismiss filed by Blair County (ECF No. 104) is GRANTED, without prejudice; the motion to dismiss filed by Officer Fry, Officer Rosenberry, and Logan Township (ECF No. 108) is GRANTED, with prejudice; the motion to dismiss filed by Chief Berg and Allegheny Township (ECF No. 110) is DENIED; the motion to dismiss filed by former District Attorney Consiglio (ECF No. 116) is GRANTED, without prejudice; the motion to dismiss filed by Chief Estep, Officer Fochler, and Hollidaysburg Borough is DENIED (ECF No. 118); and the motion to dismiss filed by Dr. Letcher and Ms. Hoover  (ECF No. 120) is DENIED.  As provided below, Plaintiff is granted leave to file a second amended complaint on or before **October 29, 2021** as to his claims against Defendants Consiglio and Blair County if Plaintiff chooses to pursue those claims.

## I.  Factual and Procedural History

The following facts are accepted as true for the purpose of the pending motions to dismiss:

In August 2019, Plaintiff was a student at the Indiana University of Pennsylvania in Indiana, Indiana County, Pennsylvania, pursuing a graduate degree (ECF No. 86 at ¶¶24-25).  As part of that program, Plaintiff was required to complete a "Field Experience" or "Internship", and Plaintiff was completing his internship with the Hollidaysburg Area School District.  *Id.* at ¶¶ 26, 28-29.  Plaintiff alleges he began his internship on August 27, 2019, but was terminated in November, 2019, from his position with Hollidaysburg Area School District shortly after he made a "ChildLine" report in accordance with his mandatory reporting obligations.  *Id.* at ¶29, 41, and 44.

On Wednesday, November 20, 2019, between approximately 5:10 p.m. and 5:20 p.m., voicemail messages were left at five different schools within the Hollidaysburg Area School District. *Id.* at ¶¶ 46, 52, and 67. The voicemails messages communicated a "deadline" of Friday, November, November 22, 2019 at 5:00 p.m. to either ignore him or use "resources against him" or the caller would be "forced to reallocate the resources of the world." *Id.* at ¶¶ 47, 61, 69, and 71. The caller identified himself as "Mr. Fantastic". *Id.* at ¶49.

Officer Fochler responded to Charles W. Longer Elementary School at 9:14 a.m. on November 21, 2019 to investigate one of the voicemail messages. *Id.* at ¶51. He recorded the message, then responded to the Hollidaysburg Junior High School to investigate a voicemail message left there, recorded that message, and then went to Hollidaysburg Senior High School to investigate yet another voicemail message. *Id.* at ¶¶54, 59. The messages all set similar ultimatums and the caller identified himself as "Mr. Fantastic". *Id.* at ¶¶60-62. While Officer Fochler was listening to the voicemail message at Hollidaysburg Senior High School, Dr. Letcher, principal of Hollidaysburg Senior High School, entered the room and allegedly falsely reported to law enforcement that she knew the voice of the caller. *Id.* at ¶63. Dr. Letcher requested that Ms. Hoover, Hollidaysburg School District guidance counselor, listen to the voicemail messages, and Plaintiff alleges Dr. Letcher and Ms. Hoover falsely, and with the intent to mislead, identified Plaintiff as the caller. *Id.* at ¶¶ 64-65.

Officer Fochler also received information from Chief Berg of the Allegheny Township Police Department regarding voicemail messages that were left at Frankstown Elementary School and the Foot of Ten Elementary School. *Id.* at ¶67. The caller in those messages also identified himself as "Mr. Fantastic" and referenced a deadline of 5:00 p.m. on November 22, 2019. *Id.* at ¶¶68, 71. Officer Fochler then met with administrators from Hollidaysburg Area School District,

the Pennsylvania State Police, and the Allegheny Township Police Department and, collectively, they decided that Officer Fochler would file a Criminal Complaint against Plaintiff and seek his arrest, detention, and imprisonment. *Id.* at ¶¶ 72-73.

On November 20, 2019, after the telephone calls were made to Hollidaysburg Area School District, Javier Alberto Cantos, Jr. ("Mr. Cantos"), was detained and arrested by the Logan Township Police Department. *Id.* at ¶ 85. When he was detained and arrested, Mr. Cantos told Logan Township police officers, Officer Rosenberry and Officer Fry, that he had just called Hollidaysburg Area Schools and "gave them a deadline to reallocate resources." *Id.* at ¶86. Plaintiff alleges Officer Rosenberry and Officer Fry did not notify Hollidaysburg Area School District or its resource officers and did not inform or share this information with other law enforcement, including Hollidaysburg Borough Police Department, despite Mr. Cantos' admission to leaving the voicemails. *Id.* at ¶ 87.

On November 21, 2019, prior to Plaintiff's arrest and the day after the arrest of Mr. Cantos, technical staff members at Hollidaysburg Area School District identified the phone number of the individual who made the telephone calls and left the voicemail messages. *Id.* at ¶88. Shortly thereafter, Plaintiff alleges Chief Estep of the Hollidaysburg Police Department was able to utilize law enforcement investigatory tools, which connected the identified telephone number to Mr. Cantos. *Id.* at ¶ 89. Plaintiff asserts the telephone number was associated with Mr. Cantos was not in any way associated with Plaintiff. *Id.* at ¶ 110.

Plaintiff claims that law enforcement, while investigating the alleged criminal actions, did not attempt to contact Mr. Cantos or those close to him. *Id.* at ¶¶ 90-92. Instead, Plaintiff alleges law enforcement – at the direction of Blair County District Attorney Consiglio ("Attorney

Consiglio") – ignored Mr. Cantos' confession and the evidence linking him to the voicemails and pursued the arrest and imprisonment of Plaintiff.  *Id.* at ¶¶ 94-105.

On November 21, 2019, at approximately 1:30 p.m., at his residence in State College, Pennsylvania, Plaintiff was questioned by law enforcement about the calls, denied any involvement, but ultimately was arrested.  *Id.* at ¶ 107-108, 120, 122, 124, and 126.  Plaintiff alleges Mr. Cantos was already identified, detained and had confessed to making the phone calls when Plaintiff was arrested.  *Id.* at ¶ 109.  Plaintiff contends it should have been clear to law enforcement that the voice on the voicemail messages did not, in any way, shape, or form, resemble the voice of Plaintiff at the time of Plaintiff's arrest.  *Id.* at ¶¶ 127, 132.  Plaintiff asserts Officer Fochler, Chief Estep and Chief Berg should have known that an individual had already been detained and confessed to leaving the voicemail messages.  *Id.* at ¶¶ 75-76.  Plaintiff alternatively alleges Officer Fochler and Chief Berg knew that the calls and/or voicemail messages originated from a telephone not associated with Plaintiff, but nonetheless, proceeded to still meet with Attorney Consiglio.  *Id.* at ¶77.

Plaintiff was transported to the Hollidaysburg Borough Police Department.  *Id.* at ¶128.  Plaintiff was questioned by Chief Estep about his "cartoon voice", which Plaintiff asserts acknowledges Chief Estep recognized that the voicemail message did not sound like Plaintiff.  *Id.* at ¶131.  Plaintiff provided an alibi to Chief Estep and Chief Berg during this questioning, informing them that he was on the telephone with his girlfriend at the exact time the offending telephone calls were made to the Hollidaysburg Area School District, and even showed the officers his cellular telephone to prove that he was talking to his girlfriend at the time the offending calls were placed.  *Id.* at ¶¶136-137.  However, Plaintiff continued to be interrogated by Chief Estep and Chief Berg and was eventually transported to and imprisoned at the Blair County Prison.  *Id.*

at ¶¶140,141, and 148.   The Hollidaysburg Borough Police Department charged Plaintiff with numerous crimes, including five (5) counts of each of the following criminal offenses:  Terroristic Threats – 18 Pa. C.S.A. § 2706(a)(3) – a felony of the third degree; Causing or Risking Catastrophe – 18 Pa. C.S.A. § 3302(b) – a felony of the third degree; Harassment – 18 Pa. C.S.A. § 2709(a)(7) – a misdemeanor of the third degree; and Disorderly Conduct – 18 Pa .C.S.A. § 5503(a)(1) – a misdemeanor of the third degree.   *Id.* at ¶149.   Plaintiff was detained that night at Blair County Prison and was arraigned the following morning on November 22, 2019.   *Id.* at ¶¶150-151. Plaintiff was strip-searched, his mugshot was taken, he was subjected to continued harassment by corrections officers, and he was placed into a cell with other inmates until his release from prison on bail on November 22, 2019.  *Id.* at ¶¶ 152-153.

On Friday, November 22, 2019, the Pennsylvania State Police released a media advisory that Plaintiff had been charged in connection with the telephone calls and/or voicemail messages. *Id.* at ¶155.  Plaintiff alleges numerous media and news outlets also released articles and news stories about the incident, naming Plaintiff as the suspect who was arrested, imprisoned, and charged in connection with the telephone calls and/or voicemail messages.  *Id.* at ¶156.  Plaintiff alleges the Superintendent of Hollidaysburg Area School District, Dr. Robert J. Gildea, forwarded a message to parents and guardians in the District informing them that Plaintiff had been charged with placing the calls.  *Id.* at ¶158.

On November 24, 2019, Defendants Sergeant Moyer and Chief Estep informed Plaintiff that all pending charges would be dismissed, as they had identified the individual responsible for making the telephone calls and/or leaving the voicemail messages at Hollidaysburg Area School District, and apologized for their wrongdoing.  *Id.* at ¶¶ 159, 160.

In his amended complaint, Plaintiff sets forth the following nine causes of action against the various Defendants:

Count I- False Arrest (42 U.S.C. § 1983) against Attorney Consiglio, Chief Estep, Officer Fochler, Chief Berg, Hollidaysburg Officer Doe, Sergeant Moyer, Officer Rosenberry, Officer Fry, Dr. Letcher, and Ms. Hoover;

Count II- False Imprisonment (42 U.S.C. § 1983) against Attorney Consiglio, Chief Estep, Officer Fochler, Chief Berg, Hollidaysburg Officer Doe, Sergeant Moyer, Officer Rosenberry, Officer Fry, Dr. Letcher, and Ms. Hoover;

Count III- Malicious Prosecution (42 U.S.C. § 1983) against Chief Estep, Officer Fochler, Chief Berg, Hollidaysburg Officer Doe, and Sergeant Moyer;

Count IV- False Arrest (Pennsylvania Common Law) against Attorney Consiglio, Chief Estep, Officer Fochler, Chief Berg, Hollidaysburg Officer Doe, Sergeant Moyer, Officer Rosenberry, Officer Fry, Dr. Letcher, and Ms. Hoover;

Count V- False Imprisonment (Pennsylvania Common Law) against Attorney Consiglio, Chief Estep, Officer Fochler, Chief Berg, Hollidaysburg Officer Doe, Sergeant Moyer, Officer Rosenberry, Officer Fry, Dr. Letcher, and Ms. Hoover;

Count VI- Malicious Prosecution (Pennsylvania Common Law) against Chief Estep, Officer Fochler, Chief Berg, Hollidaysburg Officer Doe, and Sergeant Moyer;

Count VII- Monell Claim – Failure to Train, Supervise, and Discipline against Defendant Blair County, Defendant Hollidaysburg Borough, Defendant Allegheny Township, and Defendant Logan Township;[4]

Count VIII- Negligent Infliction of Emotional Distress against Dr. Letcher and Ms. Hoover; and

Count IX- Intentional Infliction of Emotional Distress against Dr. Letcher and Ms. Hoover

As previously stated, with the exception of Sergeant Moyer, Defendants move for dismissal of all claims against them in their motions.

## II.  Legal Standard

---

[4] Defendants Borough of State College, State College Officer Doe, Pennsylvania State University Department of University Police & Public Safety, and Defendant Officer John Doe of the Pennsylvania State University Department of University Police & Public Safety were dismissed from this case on November 30, 2020 pursuant to the Court's approval of stipulations of dismissal without prejudice as to those Defendants (ECF Nos. 84, 85, 87, and 88).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 664. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Bell Atl. v. Twombly*, 550 U.S. at 570).

## III. Analysis

The amended complaint (ECF No. 86) presents federal civil rights claims and pendant state common law causes of action. The Court will view each of these claims separately for the different Defendants.

### A. False Arrest, False Imprisonment and Malicious Prosecution Claims Against Chief Berg, Estep, and Officer Fochler

Plaintiff's federal false arrest, false imprisonment and malicious prosecution claims in this matter are based on 42 U.S.C. §1983, which provides civil remedies against any person who, under color of state law, deprives another person of rights protected by the United States Constitution. *See Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992). Section 1983 does not, by itself, confer any substantive rights, but rather serves as a vehicle to enforce rights granted under the Constitution or federal law. *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979). To state

9

a claim under Section 1983, a plaintiff must "prove a violation of the underlying constitutional right." *Daniels v. Williams,* 474 U.S. 327, 330 (1986).

To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *Groman v. Twp. of Manalapan,* 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.,* 855 F.2d 136, 141 (3d Cir. 1988)). Similarly, to state a claim for false imprisonment, a plaintiff must allege that (1) he was imprisoned, and (2) his imprisonment was unlawful. *Glaspie v. Cty. of Gloucester*, No. CV 15-7691, 2018 U.S. Dist. LEXIS 148981, at *4 (D.N.J. Aug. 31, 2018). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under §1983 for false imprisonment based on a detention pursuant to that arrest." *Groman*, 47 F.3d at 636. "Thus, a claim of false imprisonment in this context is derivative of a claim for arrest without probable cause." *Morency v. City of Allentown*, No. 5:19-cv-5304, 2020 U.S. Dist. LEXIS 71118, at *14 (E.D. Pa. Apr. 22, 2020) (internal citation omitted).

A claim for malicious prosecution is a slightly different type of claim. "[U]nlike the related cause of action for false arrest or imprisonment," malicious prosecution "permits damages for confinement imposed pursuant to legal process." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). To plead a claim of malicious prosecution, a plaintiff must allege (1) the defendants initiated a criminal proceeding, (2) the proceeding ended in the plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). "Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they 'conceal or misrepresent material facts' to the prosecutor." *Thomas*

*v. City of Philadelphia*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014)).  "In particular, an officer is liable if he 'fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.'" *Thomas*, 290 F. Supp. 3d at 379.

A finding of probable cause for his arrest would preclude Plaintiff's Section 1983 claims for false arrest, false imprisonment, and malicious prosecution, and as such, Chief Berg, Chief Estep, and Officer Fochler assert the claims against them should be dismissed as probable cause existed to arrest Plaintiff.  Probable cause exists where the facts and circumstances within an officer's knowledge "would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 484 (3d Cir. 1995).  The question of whether probable cause exists in a §1983 civil damage suit is generally one left for the jury to decide.  *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000) (citations and quotation marks omitted).  However, a district court may decide whether probable cause exists as a matter of law if the evidence, when viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding.  *Sherwood v. Mulvihill,* 113 F.3d 396, 401 (3d Cir. 1997).  This determination typically arises within the context of a motion for summary judgment.  *See, e.g., Minatee v. Philadelphia Police Dept.,* 11-3609, 2012 U.S. App. LEXIS 22444, at *2 (3d Cir. 2012); *Young v. City of Wildwood,* 323 F. App'x 99, 101 (3d Cir. 2009); *Henderson v. Bailey,* 1:09-CV-36-SJM, 2011 U.S. Dist. LEXIS 34904 (W.D. Pa. Mar. 31, 2011).

The Court must accept as true the factual allegations in the amended complaint (ECF No. 86), and under that standard, finds Plaintiff sufficiently pleaded the first element to his false arrest

claim as to Chief Berg, Chief Estep and Officer Fochler to show he was arrested.  As to the second element of probable cause, this issue is best left for the fact finder.   While it is undisputed Dr. Letcher and Ms. Hoover identified the voice on the messages to Hollidaysburg School District as Plaintiff's voice to law enforcement, Plaintiff alleges technical staff members at Hollidaysburg Area School District identified the phone number of the individual who made the telephone calls prior to Plaintiff's arrest, and Chief Estep was able to utilize law enforcement investigatory tools which connected the identified telephone number to Mr. Cantos.  *Id.* at ¶¶88- 89.  However, Chief Berg, Chief Estep, and Officer Fochler did not attempt to contact Mr. Cantos and proceeded forward with arresting Plaintiff.  *Id.* at ¶90.  The Third Circuit has stated it determines whether the proceeding was initiated without probable cause based on the information available to officers <u>at the time the [arrest] warrant was sought.</u> *Waters v. Cheltenham Twp.*, 700 F. App'x 149, 153 (3d Cir. 2017) (internal citation omitted) (emphasis in original).  Plaintiff acknowledges that Chief Berg, Chief Estep, and Officer Fochler did not have any knowledge of Mr. Cantos' arrest or alleged confession at the time they arrested Plaintiff, but irrespective of Mr. Cantos' arrest, the facts against those Defendants concerning their knowledge of the phone number the calls originated from, and that the number was not associated with Plaintiff, supports an initial finding at this stage in the proceedings that Plaintiff may proceed forward with his claim he was arrested without probable cause.

As Plaintiff has adequately pleaded Chief Berg, Chief Estep, and Officer Fochler did not have probable cause at the time of his arrest, Plaintiff has sufficiently pleaded his false imprisonment claims as the parties do not appear to contest that Plaintiff was detained pursuant to his arrest.  Regarding Plaintiff's malicious prosecution claim, the four other elements of a malicious prosecution claim against these Defendants, i.e. their initiation of a criminal proceeding,

the proceeding ending in Plaintiff's favor, acting maliciously or for a purpose other than bringing Plaintiff to justice, and Plaintiff suffering a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, have all been sufficiently alleged in the amended complaint (ECF No. 86).  As to acting maliciously, Plaintiff specifically pleads Chief Berg, Chief Estep, and Officer Fochler, among other Defendants, ignored the evidence linking Mr. Cantos to the alleged criminal actions, including Mr. Cantos' telephone number being identified as the telephone number which called Hollidaysburg Area School District, and Plaintiff alleges these Defendants' conduct was malicious and willful (ECF No. 86 at ¶95, 193).

Chief Berg specifically contends he is not liable under Plaintiff's Section 1983 claims as he was not the officer that initiated the criminal charges against Plaintiff.  However, as raised in Plaintiff's brief in opposition (ECF No. 125), Plaintiff alleges Chief Berg investigated the voicemail messages that were left at Frankstown Elementary School and Foot of Ten Elementary School and conveyed that information to Officer Fochler (ECF No. 86 at ¶ 67).  Plaintiff further alleges Chief Berg received statements from Dr. Letcher and Ms. Hoover, *id.* at ¶ 74, and he knew the telephone calls and voicemail messages originated from a telephone number not associated with Plaintiff.  *Id.* at ¶ 77.  Plaintiff further alleges Chief Berg met with Attorney Consiglio to discuss the filing of charges against Plaintiff, and Chief Berg requested Attorney Consiglio undertake an investigation of Plaintiff.  *Id.* at ¶ 77, 82.  As to Chief Berg's investigation, Plaintiff alleges Chief Berg ignored evidence linking Mr. Cantos to the alleged crimes and perpetuated Plaintiff's detainment.  *Id.* at ¶ 95, 131.  Based on the allegations relating to Chief Berg's pre-arrest involvement, Plaintiff has sufficiently pleaded his Section 1983 claims as to Chief Berg.

Chief Berg, Chief Estep, and Officer Fochler alternatively allege they are entitled to qualified immunity in this matter.  To decide if an officer is entitled to qualified immunity, we use

the two-prong test established in *Saucier v. Katz*, 533 U.S. 194 (1982). *See Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). At the first prong, the court asks if the facts, "[t]aken in the light most favorable to the party asserting the injury…show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At the second prong, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009). A "clearly established" right is one that is sufficiently clear such that every reasonable official would have understood that what he or she is doing violates that right. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *Mammaro v. New Jersey Division of Child Protection and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). The court may address these two prongs in whichever order it finds appropriate for the case. *Pearson*, 555 U.S. at 235.

While courts should resolve questions of qualified immunity at the earliest possible stage of litigation, a finding of qualified immunity "'will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)); *C.f. Newland v. Reehorst*, 328 Fed. App'x. 788, 791 n.3 (3d Cir. 2009) ("We caution, however, that it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."). If the complaint fails to state a claim of a violation of clearly established law on its face, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Thomas*, 463 F.3d at 291 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, the immunity of Chief Berg, Chief Estep, and Officer Fochler is not established on the face of the amended complaint (ECF No. 86) with regard to Plaintiff's Section 1983 claims.

The parties do not appear to dispute Plaintiff was prosecuted, arrested, and detained but contest whether probable cause existed for Plaintiff's arrest.  As previously addressed, this determination is typically one left for the factfinder to decide in a Section 1983 suit.  Moreover, when the evidence is viewed in the light most favorable to the Plaintiff, this case does not present a situation where the Court could decide that probable cause existed as a matter of law.

Chief Berg, Chief Estep and Officer Fochler also argue they are entitled to qualified immunity as there are no cases with sufficiently similar facts that would put them on notice their involvement as alleged in the amended complaint (ECF No. 86) would be unconstitutional. However, Plaintiff alleges these Defendants participated in the prosecution, arrest, and detention of Plaintiff without probable cause, and it is well established that taking such actions without probable cause is in violation of the Plaintiff's constitutional rights.  *See Berg v. Cnty. of Allegheny,* 219 F.3d 261, 269 (3d Cir. 2000) ("The Fourth Amendment prohibits arrest without probable cause."); *Pinkney v. Meadville*, No. 1:19-cv-167, 2020 U.S. Dist. LEXIS 60081, at *15-16 (W.D. Pa. Apr. 3, 2020) (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("A false imprisonment cause of action derives from the Fourteenth Amendment bar against a deprivation of liberty without due process of law.").[5]

Chief Estep and Officer Fochler also raise they are entitled to immunity because they relied on the advice of District Attorney Consiglio for the filing of the criminal complaint and arrest of Plaintiff.  In *Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010), the Third Circuit held that:

---

[5] Plaintiff pleads his malicious claim under the "Fourth and/or Fourteenth Amendment" (ECF No. 86 at ¶193). Regardless of Plaintiff's basis for pleading the claim in this fashion, case law establishes malicious prosecution without probable cause is a violation of Fourth Amendment rights. *See Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (citing *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).

[A] police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause. That reliance must itself be objectively reasonable, however, because a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one. Accordingly, a plaintiff may rebut this presumption by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice.

622 F.3d at 255-56 (internal citation omitted).

Plaintiff contends Chief Estep and Officer Fochler should have known probable cause did not exist for the crimes for which Plaintiff was arrested and also contends the voicemails themselves did not constitute a crime (ECF No. 125 at pp. 44-45). Irrespective of whether the voicemails constituted a crime, the Court finds Plaintiff has adequately asserted facts, which, if true, indicate a reasonable officer would not have relied on the prosecutor's advice. Plaintiff pleads Officer Fochler and Chief Berg would have known, or should have known, with reasonable investigation that the telephone calls and/or voicemail messages originated from a telephone number not associated with Plaintiff, and alternatively, Officer Fochler and Chief Berg knew that the telephone calls and/or voicemail messages originated from a telephone number not associated with Plaintiff and, nonetheless, proceeded to meet with Attorney Consiglio about the filing of charges against Plaintiff (ECF No. 86 at ¶¶75-76).

It is not clear at this time what information Chief Berg and Officer Fochler did or did not convey to Attorney Consiglio or what Attorney Consiglio's role was in advising Chief Berg and Officer Fochler. Factual issues as to whether a defendant who consulted counsel gave that counsel complete and correct information may preclude an early finding of qualified immunity. *See Behne v. Halstead*, 1:13-CV-0056, 2014 U.S. Dist. LEXIS 59109 (M.D. Pa. Apr. 29, 2014); *See Spiess v. Pocono Mountain Reg'l Police Dep't*, 3:10-CV-287,

2013 U.S. Dist. LEXIS 41814 (M.D. Pa. Mar. 26, 2013), *appeal dismissed*, (Dec. 19, 2013) (reliance on counsel did not provide immunity where the police knew the information they gave the prosecutor was questionable, the prosecutor was already involved in the case and thus not neutral, and the police did not have to make any split-second decisions). Accordingly, at this early stage of the litigation, qualified immunity is not established on the face of the amended complaint (ECF No. 86) with regard to Plaintiff's Section 1983 claims against Chief Berg, Chief Estep and Officer Fochler.

B.   Pennsylvania Common Law Claims Against Chief Berg, Chief Estep and Officer Fochler.

Plaintiff also raises state law claims of false arrest, false imprisonment, and malicious prosecution against Chief Berg, Chief Estep, and Officer Fochler.   Under Pennsylvania law, claims for false arrest and false imprisonment are "essentially the same actions." *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 357 (E.D. Pa. 2012) (internal quotation omitted); *Gagliardi v. Lynn*, 285 A.2d 109, 111-12 (Pa. 1971).   Though the fundamental elements for a claim of false arrest and false imprisonment may have slight variations, a plaintiff must prove: "(1) the detention of another person (2) that is unlawful." *Braswell v. Wollard*, 243 A.3d 973, 979 (Pa. Super. Ct. 2020) (citing *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010); *see also Kintzel v. Kleeman*, 965 F. Supp. 2d 601, 608 (M.D. Pa. 2013).   Detention of an individual by a state officer who did not possess probable cause could be unlawful. *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).

To prevail on a malicious prosecution claim under Pennsylvania law, a plaintiff must prove that "the defendant (1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." *Corrigan v. Cent. Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Commw. Ct 2003) (citing *Turano v. Hunt*,

631 A.2d 822, 824 (Pa. Commw. Ct. 1993)).  A state law cause of action for malicious prosecution thus includes the same first four elements as a claim under Section 1983 but does not require showing a deprivation of liberty.  *See Napier v. City of New Castle*, 407 F. App'x 578, 583 (3d Cir. 2010) .

The Court has already determined Plaintiff has sufficiently pleaded Chief Berg, Chief Estep, and Officer Fochler initiated proceedings against Plaintiff and detained him, and the parties do not dispute the criminal charges terminated in Plaintiff's favor.  The Court has also already determined Plaintiff has sufficiently pleaded a lack of probable cause for his arrest, and these Defendants are not entitled to qualified immunity on the face of the amended complaint (ECF No. 86).  These determinations apply to Plaintiff's state law claims against these Defendants as well.  Accordingly, the Court finds Plaintiff has sufficiently pleaded his state law claims against Chief Berg, Chief Estep, and Officer Fochler.

C. Federal and State False Arrest and False Imprisonment Claims Against Officers Rosenberry and Fry

Officers Rosenberry and Fry were not the officers who arrested or filed charges against Plaintiff, and Plaintiff's amended complaint (ECF No. 86) does not contain any facts to show they had any involvement in those decisions.  Plaintiff's theory of liability against Officers Rosenberry and Fry essentially is they should have contacted Hollidaysburg School District after Mr. Cantos stated he made calls to Hollidaysburg School when these officers took him into custody on November 20, 2019.  However, Plaintiff has failed to plead facts to show Officers Rosenberry and Fry were aware these calls were the subject of a criminal investigation by another law enforcement department, let alone that they had knowledge Plaintiff was being investigated by another law enforcement department for these calls.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.

1988) (Liability under 42 U.S.C. § 1983 can arise only where an official had "personal involvement in the alleged wrongs").

The Court need not reach the qualified immunity argument raised by Officers Rosenberry and Fry as it finds Plaintiff has failed to cite to any authority that their actions satisfy the required personal involvement element of Plaintiff's claims under Section 1983 or the elements of Plaintiff's Pennsylvania state law claims.  Given Plaintiff's acknowledgment Officers Rosenberry and Fry did not participate in his prosecution and arrest, the Court will dismiss the claims against them with prejudice as amendment would not cure these claims.

D. Federal and State False Arrest and False Imprisonment Claims Against Attorney Consiglio

In the amended complaint (ECF No. 86), Plaintiff alleges Attorney Consiglio allegedly provided Officer Fochler, with the "approval, encouragement, and/or specific direction, guidance, and legal advice" to file the criminal complaint, "provided legal advice and…including advice and recommendations related to reasonable suspicion and probable cause" allegedly "offered and provided legal advice…during their investigation into the alleged criminal offenses" and "directed [the officers] to gather evidence against Plaintiff." *Id.* at ¶¶ 78, 97-99.  Plaintiff further alleges Attorney Consiglio personally met with and directed the law enforcement officers to locate and interview Plaintiff and "to arrest, detain and imprison Plaintiff even though he knew that the phone number from which the voicemail originated was not from Plaintiff's cellular telephone." *Id.* at ¶¶ 100-103.  Plaintiff also alleges "Attorney Consiglio, at the request of Officer Fochler, Chief Berg, and other law enforcement, undertook an investigation of Plaintiff, requested that law enforcement gather specific evidence, requested that law enforcement pursue Plaintiff's whereabouts, and requested that law enforcement detain, seize, and/or arrest and imprison Plaintiff." *Id.*

Attorney Consiglio argues in his motion to dismiss (ECF No. 116) he is entitled to absolute prosecutorial immunity, and alternatively, qualified immunity, because he was acting in his prosecutorial role.  Determining which of a prosecutor's actions were prosecutorial in nature "is a fact-specific" inquiry.  *Weimer v. Cty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020).  The court must "ascertain just what conduct forms the basis for the plaintiff's cause of action" and "[t]hen…determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served."  *Id.* (quoting *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020) (internal quotation marks and citation omitted)).  "[W]hile we tend to discuss prosecutorial immunity based on alleged *acts*, our ultimate analysis is whether a defendant has established absolute prosecutorial immunity from a given *claim*."  *Id.* (emphasis in original).  The Third Circuit requires the dissection of the prosecutor's actions to determine whether they were prosecutorial or investigative in nature.  *Weimer*, 972 F.3d at 188.  The court should define each act pleaded in the complaint to determine which acts are investigative and which are prosecutorial.  *Id.* (internal quotations omitted).

The amended complaint (ECF No. 86) has very few facts as to what role Attorney Consiglio played in Plaintiff's arrest.  Plaintiff summarily pleads Attorney Consiglio "undertook an investigation of Plaintiff" and "requested that law enforcement gather specific evidence" (ECF No. 86 at ¶82), and Plaintiff has taken care not to allege claims based on Attorney Consiglio assisting in filing/and or approving the criminal complaint against Plaintiff, as it is well established Attorney Consiglio would be entitled to absolute immunity on such claims.  *Weimer*, 972 F.3d at 189.  The acts Plaintiff attributes to Attorney Consiglio overlap with the acts alleged against other law enforcement Defendants concerning the events leading up to Plaintiff's arrest and detention.  However, unlike the allegations against Chief Berg, Chief Estep, and Officer Fochler, the amended

complaint (ECF No. 86) fails to assert any specific details concerning Attorney Consiglio's role in these events.

Without any specific description of what actions Attorney Consiglio took in this investigation, it is impossible for the Court to determine whether those actions fall into the quasi-judicial or investigative categories. Additionally, as to the allegations relating to Attorney Consiglio advising Officer Fochler, it is not clear from Plaintiff's allegations what such advice was and whether it concerned an investigation or related to the filing and approving of a criminal complaint. Accordingly, the Court will grant Attorney Consiglio's motion to dismiss (ECF No. 116) but do so without prejudice and allow Plaintiff to file a second amended compliant if he wishes to pursue his claims against Attorney Consiglio. As the Court will allow for amendment of these claims, it will not address any other arguments raised by Attorney Consiglio to the allegations currently pleaded against him as such allegations may be rendered moot through amendment.

E. *Monell* Claims Against Defendant Blair County, Defendant Hollidaysburg Borough, Defendant Allegheny Township, and Defendant Logan Township

Municipal liability arises when a governmental entity causes an employee to violate another's constitutional rights by an official custom or policy. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). To establish liability, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between the execution of the policy or custom and the injury suffered. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). A policy exists "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 481(1986)). A

21

custom may be formed when the "'practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. at 691).

A municipality may be held liable for constitutional violations that result from inadequate training of its employees if the failure to train constitutes a custom of the municipality. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The failure must reflect "deliberate indifference to the [constitutional] rights of persons with whom the police come into contact." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1028 (3d Cir. 1991) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A showing of deliberate indifference requires that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999). Ordinarily, plaintiff must show a "pattern of similar [constitutional] violations" to prove deliberate indifference in the failure to train context. *Connick*, 563 U.S. at 63. However, the Supreme Court has indicated that a single incident may evince deliberate indifference when "the need to train officers…can be said to be so obvious" in itself and the lack thereof would predictably lead to recurrent rights violations. *City of Canton*, 489 U.S. at 390 n.10; *see also Thomas v. Cumberland Cty.*, 749 F.3d 217, 223-25 (3d Cir. 2014).

As previously stated, Plaintiff has failed to plead a claim against Officers Rosenberry and Fry, and likewise, Plaintiff has failed to adequately establish a causal link between any custom or policy of Logan Township and his arrest. *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (holding that *Monell* limits municipal liability to only those constitutional torts actually caused by the municipality). Similarly, the Court has also already dismissed the claims against Attorney Consiglio without prejudice, and will correspondingly dismiss the *Monell* claim against

Blair County premised on Attorney Consiglio's actions without prejudice to Plaintiff to file a second amended complaint if he chooses to pursue a *Monell* claim against Blair County.

The Court has already determined that Plaintiff's claims against Chief Berg, Chief Estep, and Officer Fochler will survive at this early stage of the litigation. Accordingly, the Court finds Plaintiff has adequately pleaded a *Monell* claim against municipal Defendants Hollidaysburg Borough and Allegheny Township. Plaintiff alleges his arrest resulted from a failure to train Hollidaysburg Borough and Allegheny Township law enforcement regarding proper police investigative practices, including, but not limited to, the responsibility to effectuate detentions, seizures, and/or arrests only upon a finding of probable cause and the responsibility to consider all reasonable and known facts and circumstances prior to arrest and detention of an individual or suspect (ECF No. 86 at ¶221 (a)-(e)). In order to ultimately succeed on his failure to train claims based on the single incident of his arrest, Plaintiff essentially must show the need for training was so obvious based on the alleged violation of Plaintiff's constitutional rights "that it is tantamount to deliberate indifference on the part of the municipal defendants." *Watson v. Witmer*, 183 F. Supp. 3d 607, 615 (M.D. Pa. 2016) ("The 'most tenuous' nature of failure-to-train theories of municipal liability, exacerbated herein by [plaintiff's] recourse to the unwonted 'single incident' iteration of deliberate indifference, suggests the difficulty [plaintiff] faces in proving his claim.") (internal citations omitted). Nonetheless, Plaintiff's allegations survive at the present stage. *Id.* The Court will deny Allegheny Township's and Hollidaysburg Borough's motions to dismiss (ECF Nos. 110 and 118) as to the *Monell* claims against these municipal entities.

F. <u>Claims Against Dr. Letcher and Ms. Hoover</u>

    1. <u>Federal and State False Arrest and False Imprisonment Claims</u>

In the context of a claim under 42 U.S.C. § 1983, the Supreme Court of the United States has stated:

> Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the state. It is enough that he is a willful participant in joint activity with the State or its agents.

*United States v. Price*, 383 U.S. 787, 794 (1966); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

"In order to prove a civil conspiracy under § 1983, [a] plaintif[f] must demonstrate (1) an agreement between two or more conspirators (2) to deprive the plaintif[f] of a constitutional right, (3) under color of state law." *Glass v. City of Philadelphia,* 455 F. Supp. 2d 302, 357 (E.D. Pa. 2006). In order to properly plead the existence of an agreement, "[t]he plaintiff must make specific factual allegations of combination…or understanding among all or any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Hammond v. Creative Financial Planning,* 800 F. Supp. 1244, 1250 (E.D. Pa. 1999). Regarding a private actor's involvement in a conspiracy, the Third Circuit has held liability for a civil conspiracy under 42 U.S.C. § 1983 "may be imputed to those who have not actually performed the act denying the constitutional rights." *Kist v. Fatula*, No. 3:2006-67, 2007 U.S. Dist. LEXIS 60615, at *23 (W.D. Pa. Aug. 17, 2007) (citing *Concrete County Corp. v. Town of Roxbury,* 442 F.3d 159, 174 (3d Cir. 2006).

Plaintiff's amended complaint alleges Dr. Letcher and Ms. Hoover acted in concert with the law enforcement Defendants to deprive Plaintiff of his constitutional rights (ECF No. 86 at ¶¶175, 186, 200, and 210). The amended complaint alleges Dr. Letcher and Ms. Hoover knowingly, and with reckless indifference, provided false and misleading information to law enforcement officers while actively and willfully participating in the law enforcement investigation with the purpose of subjecting Plaintiff to an arrest, detention, and criminal charges.

*Id.* at ¶¶173, 184, 198, and 208.   These allegations, viewed in the light most favorable to the Plaintiff, are enough to support the inference that Dr. Letcher and Ms. Hoover were "willful participants" in the activity that deprived the Plaintiff of his constitutional rights, and that they may therefore potentially be considered state actors for purposes of the Section 1983 claims Plaintiff alleges against them at this early stage of the case. *See Guttshall v. Lively*, No. 1:17-CV-00241, 2017 U.S. Dist. LEXIS 173224, at *31 (M.D. Pa. Oct. 18, 2017).

Dr. Letcher and Ms. Hoover rely on decisions from district courts sitting in diversity jurisdiction that reached a different result as to the interpretation of Pennsylvania state law claims of false arrest and imprisonment. *Naumov v. Progressive Ins. Agency, Inc.*, Civil Action No. 08-622, 2008 U.S. Dist. LEXIS 110731, at *14 (W.D. Pa. Dec. 17, 2008) (court disagreed that knowingly providing false or misleading information to authorities, even where it results in the detention of another, is adequate to state a claim for false imprisonment); *Thomas v. IPC Int'l Corp.*, No. 02-8049, 2004 U.S. Dist. LEXIS 2451, at *12 (E.D. Pa. Feb. 12, 2004) (granting summary judgment on basis that private defendant could not be held liable for false arrest and imprisonment claims when there was no evidence defendant participated in arrest and detainment of plaintiff).  However, the Court must consider how such claims have been treated in Pennsylvania state courts.  In *Gares v. Willingboro Township*, 90 F.3d 720, (3d Cir. 1996), the Third Circuit stated that:

> In adjudicating a case under state law, we are not free to impose our own view of what state law should be; rather, we are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of guidance from the state's highest court, we are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule.
>
> *Id.* at 725.

In predicting state law, we cannot disregard the decision of an intermediate appellate court unless we are convinced that the state's highest court would decide otherwise. *Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991).

Recently, in *Braswell v. Wollard*, 243 A.3d 973, 980 (Pa. Super 2020), the Pennsylvania Superior Court considered whether the trial court erred in granting summary judgment in favor of private citizens as to plaintiff Braswell's claims of false arrest and false imprisonment, noting, under Pennsylvania law, these two claims have virtually identical theories of liability. *Id.* at 979-980. The Pennsylvania Superior Court observed these claims typically are lodged against defendants who have actually held the plaintiff in custody, such as police, but not defendants whose statements have prompted police to arrest the plaintiff. *Id.* at 980. Like in this case, there were no allegations that the private citizen defendants detained Braswell. The court was instead charged with determining as a preliminary matter whether the claims of false arrest and false imprisonment are applicable to such private citizen parties who have not themselves taken the plaintiff into custody. *Id.* Ultimately, the Pennsylvania Superior Court stated:

> Although we have found no controlling Pennsylvania decisions on this specific point, Pennsylvania law has been interpreted to allow such claims against private parties alleged to have indirectly caused an arrest by making a false report. *See Doby v. Decrescenzo*, 1996 U.S. Dist. LEXIS 13175, at *13 (E.D. Pa. Sept. 9, 1996) (finding defendant could be liable for false arrest/imprisonment "if he has either knowingly provided false information to authorities or knowingly provided incomplete, misleading information to the authorities which resulted in the detention of another."); *see also Martucci v. Borough of Milford*, 2018 U.S. Dist. LEXIS 60907, 2018 WL 175572 (E.D. Pa. Apr. 10, 2018); *Davila v. United States*, 247 F. Supp. 3d 650, 658-59 (W.D. Pa. 2017); *Reiber v. Fillipone*, 2016 U.S. Dist. LEXIS 166446 (E.D. Pa. Dec. 2, 2016); *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D. Pa. 1992).

The *Braswell* Court determined there was sufficient evidence from which a jury could reasonably infer that the private citizen defendants' statements to police were knowingly false, and a determinative factor in the police's decision to arrest Braswell. *Id.* at 980. In this case, Plaintiff

has sufficiently pleaded his state law claims of false arrest and false imprisonment by asserting Dr. Letcher's and Ms. Hoover's statements were knowingly false and were relied on in the decision to arrest Plaintiff.

Dr. Letcher and Ms. Hoover rely on the case of *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991) to contend their statements to law enforcement are absolutely privileged (ECF No. 121 at p. 15). However, the claim at issue in *Pawloski* was defamation, and courts have counseled for a different result in cases, like this one, involving malicious prosecution and conspiracy claims. *See Guttshall v. Lively*, No. 1:17-CV-00241, 2017 U.S. Dist. LEXIS 173224, at *31 (M.D. Pa. Oct. 18, 2017) (defendant not entitled to immunity when plaintiff alleged defendant unlawfully conspired with law enforcement to cause plaintiff to be subjected to criminal process without probable cause). *Pawloski* does not afford immunity as Plaintiff alleges Dr. Letcher and Ms. Hoover actively participated in the investigation of Plaintiff and provided false information to law enforcement officials to secure his arrest and detention.

Dr. Letcher and Ms. Hoover also make an argument they are entitled to qualified immunity if they are state actors. Dr. Letcher and Ms. Hoover are not entitled to qualified immunity at this time based on the face of the amended complaint (ECF No. 86) as Plaintiff's alleges they actively participated in the investigation and provided false information to law enforcement officials. Further, the Court has already found that the issue of probable cause in this case cannot be determined at this early stage of the litigation, but must await a fully documented motion for summary judgment or trial.

2. <u>Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress Claims</u>

The cause of action for negligent infliction of emotional distress ("NIED") is restricted to four factual scenarios: "(1) situations where the defendant had a contractual or fiduciary duty

toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008). To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania law, a plaintiff must allege that the defendant's "(1) extreme and outrageous conduct, (2) intentionally or recklessly, (3) caused, (4) severe emotional distress." *Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 642 (E.D. Pa. 1999) (citing *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 991 (1987)). The Court finds the amended complaint (ECF No. 86) contains sufficient allegations to state the NIED and IIED claims against these Defendants. Specifically, the allegation that Dr. Letcher and Ms. Hoover knowingly provided a false identification of Plaintiff's voice to law enforcement satisfies the elements of the cause of action. At this early stage of the proceedings, these claims survive Dr. Letcher's and Ms. Hoover's motion to dismiss (ECF No. 120).

Dr. Letcher and Ms. Hoover contend they are entitled to immunity under the Political Subdivision Torts Claim Act (PSTCA) as to Plaintiff's NIED claim against them. The PSTCA grants local agencies, such as school districts and their employees, broad tort immunity. *See, S.F. v. Del. Valley Sch. Dist.*, 2008 U.S. Dist. LEXIS 83473, *22 (M.D. Pa. Oct. 20, 2008) (citing *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006)). In pertinent part, the PSTCA states: [e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person. 42 Pa. C.S. § 8541. In order for liability to be imposed, 42 Pa.C.S. § 8542(a) sets forth three conditions that each must be met: (1) the damages must be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not

having available a defense under 42 Pa. C.S. § 8541; (2) the injury must have been caused by the negligent acts of the local agency or an employee of the local agency acting within the scope of his or her office or duties; and (3) the negligent action must fall within one of the exceptions to governmental immunity set forth in 42 Pa. C.S. § 8542(b). *Lindstrom v. City of Corry*, 563 Pa. 579, 763 A.2d 394 (2000). It is plaintiff's burden to demonstrate that all three conditions have been met. *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972, 977 (Pa. Cmwlth. 2002).

Dr. Letcher and Ms. Hoover argue their identification of Plaintiff's voice was undertaken during the course and scope of their employment with the Hollidaysburg Area School District, and Plaintiff cannot meet any of the three conditions to impose liability against them (ECF No. 121 at p. 14). However, Plaintiff contends that Dr. Letcher and Ms. Hoover were acting outside the course and scope of their employment when they inserted themselves into an investigation being conducted by law enforcement (ECF No. 125 at p. 46). Plaintiff has also sued these Defendants in their individual capacity. Based on the allegations in the amended complaint (ECF No. 86), Dr. Letcher and Ms. Hoover are afforded immunity under the PSTCA at this time.

Additionally, insofar as Dr. Letcher and Ms. Hoover move to dismiss Plaintiff's allegations against them for punitive damages on the basis that punitive damages are not permitted against a school district, Plaintiff has pleaded these damages against Dr. Letcher and Ms. Hoover as individuals as Plaintiff contends his claims against them are based on their actions outside the course and scope of their employment. Plaintiff has adequately asserted a claim for punitive damages against Dr. Letcher and Ms. Hoover.

Dr. Letcher and Ms. Hoover also assert Plaintiff has failed to adequately plead his IIED claim against them as Plaintiff has not alleged extreme and outrageous conduct. These Defendants correctly state "[l]iability for IIED 'has been found only where…the case is one in which the

29

recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'" *Smith v. School Dist.*, 112 F. Supp. 2d 417, 428 (citing *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173 (Pa. Super 1996)). In this case, Plaintiff has alleged Dr. Letcher and Ms. Hoover knowingly and with reckless indifference provided false and misleading information to law enforcement with the purpose of subjecting Plaintiff to an arrest, detention and criminal charges and conspired with law enforcement to effect the arrest and imprisonment of Plaintiff (ECF No. 86 at ¶¶173, 175, 184, 186, 198, 200, 208, and 210). Plaintiff also pleads that these Defendants engaged in this conduct in retaliation for Plaintiff making a ChildLine report in his role as a mandated reporter. *Id.* at ¶¶228 and 237. Based on these allegations, the Court finds Plaintiff has adequately stated a claim for intentional infliction of emotional distress. *See Gleeson v. Robson*, Nos. 3:CV-02-1747, 3:CV-03-0552, 2005 U.S. Dist. LEXIS 43310, at *90 (M.D. Pa. May 6, 2005); *Gilbert v. Feld,* 788 F. Supp. 854, 857, 862 (E.D. Pa. 1992) (holding that claim had been stated where defendants were alleged to have "procured the institution of criminal charges against [plaintiff] by providing false and misleading information to and by concealing information from" the district attorney's office). Accordingly, the Court finds Plaintiff has adequately pleaded his federal and state law claims against Dr. Letcher and Ms. Hoover, and their motion to dismiss (ECF No. 120) is denied.

## IV.    Conclusion

For the reasons detailed below, the Court rules on the moving Defendants' motions to dismiss as follows: the motion to dismiss filed by Blair County (ECF No. 104) is GRANTED without prejudice; the motion to dismiss filed by Officer Fry, Officer Rosenberry, and Logan Township (ECF No. 108) is GRANTED, with prejudice; the motion to dismiss filed by Chief Berg and Allegheny Township (ECF No. 110) is DENIED; the motion to dismiss filed by former District

Attorney Consiglio (ECF No. 116) is GRANTED, without prejudice; the motion to dismiss filed by Chief Estep, Officer Fochler, and Hollidaysburg Borough is DENIED (ECF No. 118); and the motion to dismiss filed by Dr. Letcher and Ms. Hoover  (ECF No. 120) is DENIED. Plaintiff is granted leave to file a second amended complaint on or before **October 29, 2021** as to his claims against Defendants Consiglio and Blair County as provided herein if Plaintiff chooses to pursue those claims.

An appropriate Order will follow.

Stephanie L. Haines
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT M. VINOSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 3:20-cv-134 |
| | ) | Judge Stephanie L. Haines |
| THE HONORABLE RICHARD A. | ) | |
| CONSIGLIO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

AND NOW, this 29th day of September, 2021, for the reasons set forth in the accompanying Opinion, IT IS HEREBY ORDERED:

1. The motion to dismiss filed by Defendant Blair County (ECF No. 104) IS GRANTED, without prejudice;

2. The motion to dismiss filed by Defendants Fry, Rosenberry, and Township of Logan (ECF No. 108) IS GRANTED, with prejudice;

3. The motion to dismiss filed by Defendants Leo Berg and Allegheny Township (ECF No. 110) IS DENIED;

4. The motion to dismiss filed by Defendant Consiglio (ECF No. 116) IS GRANTED, without prejudice;

5. The motion to dismiss filed by Defendants Estep, Fochler, and Hollidaysburg Borough is DENIED;

6. The motion to dismiss filed by Defendants Letcher and Hoover  (ECF No. 120) is DENIED; and,

7. Plaintiff is granted leave to file a second amended complaint on or before **October 29, 2021** as to his claims against Defendants Consiglio and Blair County as provided in the accompanying Opinion of the Court.

Stephanie L. Haines
United States District Judge